**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

_____

PAIGE GALLEGOS, as a personal representative
Of the ESTATE OF JUSTIN GARCIA,

     Plaintiff,

         vs.                    No. 1:24-CV-01268-KG-SCY

NEW MEXICO CORRECTIONS DEPARTMENT, _et al_,

     Defendant.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Defendants New Mexico Corrections Department ("NMCD"), Central New Mexico Correctional Facility ("CNMCF"), Warden Timothy Hatch, and Corrections Officers Esmeralda Rascon, Richard Chavez, Brandie Richardson, Ramon Tena, Nicholas Santiago, Herman Madrid, and Israel Velasco (together "NMCD Defendants") move to dismiss Plaintiff Paige Gallegos' First Amended Complaint, (**Doc. 11**).  The NMCD Defendants filed their Motion to Dismiss, (**Doc. 12**), on February 18, 2025.  Plaintiff filed her Response, (**Doc. 18**), on April 04, 2025, and the NMCD Defendants their Reply, (**Doc. 19**), on April 15, 2025.  Having considered the parties' briefing and applicable law, the Court **GRANTING** the NMCD Defendants' Motion to Dismiss, (**Doc. 12**).

### BACKGROUND[1]

On June 27, 2021, Justin Garcia, completed his sentence arising from two 2016 cases. (**Doc. 11**) **at 15, ¶ 90**.  Less than a month after his release from prison, officers arrested Mr.

---

[1] The facts alleged in this section are taken from Plaintiff's First Amended Complaint, (**Doc. 11**). The Court accepts the non-conclusory allegations in Plaintiff's First Amended Complaint as true and recites them in a light most favorable to Plaintiff.

Garcia on three new charges in Albuquerque New Mexico. *Id.* **at 15, ¶ 91.** At the time of his arrest, Mr. Garcia was not on parole or probation for any other cases. *Id.* **at 15, ¶ 92.**

On July 19, 2021, Judge Victor E. Valdez of the Bernalillo County Metropolitan Court issued an "Order Setting Conditions of Release and Bond." *Id.* **at 15, ¶ 93.** The order granted Mr. Garcia conditional release from custody. *Id.* Despite this order, Mr. Garcia remained in prison for another 9 days. *Id.* **at 15, ¶ 94.** On July 27, 2021, Mr. Garcia committed suicide while at CNMCF.

After Mr. Garcia committed suicide at CNMCF, his sister, Plaintiff Paige Gallegos, commenced this action against the NMCD Defendants, Wexford Health Sources Inc., and John and Jane Does 1–10. *Id.* In her Complaint, Plaintiff asserts claims against the NMCD Defendants, Wexford, and John and Jane Does 1–10 for wrongful death, deliberate indifference, negligent training and supervision, medical negligence, negligence, and false imprisonment. *Id.* **at 19–29.**

## I.    <u>Defendants NMCD's and Wexford's Behavioral Health Contract</u>:

Defendant Wexford entered into a contract with Defendant NMCD, where Wexford agreed to provide competent correctional healthcare services for the physical and mental wellbeing of the inmates held in NMCD facilities. *Id.* **at 9, ¶ 45.** This contract was in effect in July 2021, when Justin Garcia committed suicide. *Id.* **at 9, ¶ 47.** Under this contract, "Defendant Wexford had a contractual obligation and duty to provide psychiatric services including, but not limited to, the use of psychiatrists, psychiatric nurse practitioners, prescribing psychologists, and telepsychiatry." *Id.* **at 9, ¶ 48.**

Wexford's contractual obligations also included conducting an initial health screening upon each inmate's arrival at the Reception and Diagnostic Center and developing a

comprehensive treatment plan for inmates with, or at risk of developing, a mental health condition. *Id.* **at 9–10, ¶¶ 51, 57**. Defendant Wexford's initial screening of each inmate should have included a review of the inmate's mental health history and known psychiatric conditions, along with a baseline evaluation of suicide risk, required level of supervision, and any need for medication or additional treatment. *Id.* **at 10, ¶¶ 55–56**.

## II.     Justin Garcia's Suicide at CNMCF:

On July 26, 2021, the Metropolitan Detention Center in Bernallilo County, New Mexico, transferred Justin Garcia to CNMCF. *Id.* **at 5, ¶ 19**. When Mr. Garcia arrived at CNMCF, the Behavioral Health Unit assessed him in the intake holding area. *Id.* **at 5, ¶ 20**. Mr. Garcia experienced significant anxiety and depression and had been prescribed oral doses of Buspar, Gabapentin, and Olanzapine to be taken twice daily to manage his symptoms. *Id.* **at 5, ¶¶ 21, 22**.

On the morning of July 27, 2021, Mr. Garcia did not receive his Buspar or Gabapentin. *Id.* **at 6, ¶ 23**. Several times throughout this same day, Mr. Garcia asked for his medication and demonstrated mental anguish and distress. *Id.* **at 6, ¶ 24**. Each time Mr. Garcia asked for his medication, he was informed that he would have to wait until "medication pass," which normally occurred between 8:00–9:00 p.m. *Id.* **at 6, ¶ 25**. At 8:19 p.m., Defendants provided Mr. Garcia his medication; however, Mr. Garcia was allegedly "passed out" at this time and did not take the medication. *Id.* **at 6, ¶¶ 28–29**.

On the evening of July 27, 2021, Defendants Rascon, Chavez, Richardson, Tena, Santiago, Madrid, and Velasco were on duty at CNMCF and responsible for monitoring Unit 5B, which housed Justin Garcia. *Id.* **at 15, ¶ 98**. That evening, Mr. Garcia could be seen on security

camera tying his bed sheet to the lighting fixture on the ceiling in his cell and hanging himself. *Id.* **at 16, ¶¶ 100–101**.

At approximately 9:03 p.m., 20 minutes after Mr. Garcia hung himself, Defendant Rascon noticed him hanging by his neck while conducting a security check. *Id.* **at 16, ¶¶ 103– 104**. Upon finding Mr. Garcia, Defendant Rascon called for assistance. *Id.* **at 16, ¶ 108**. Defendants Hatch, Rascon, Chavez, Richardson, Tena, Santiago, Madrid, and Velasco responded to the unit. *Id.* **at 17, ¶ 109**. Defendants Madrid, Richardson, Santiago, and Rascon initiated CPR on Mr. Garcia, and continued efforts to resuscitate him until medical personnel arrived and took over. *Id.* **at 17, ¶¶ 113–14**. At 9:50 p.m., Mr. Garcia was officially pronounced deceased. *Id.* **at 17, ¶ 116**.

## III.    Other Inmate Suicides at CNMCF:

Before Justin Garcia's suicide, there were other inmate suicides at CNMCF involving inmates hanging themselves in their cells with bedsheets. *Id.* **at 14, ¶ 82**. On December 2, 2018, Keith Kosirog hung himself by a bedsheet in his cell. *Id.* **at 14, ¶ 83**. Just four hours after Mr. Kosirog committed suicide, Adonus Encinias also hung himself with a bedsheet in his cell. *Id.* **at 14, ¶ 84**.

On June 13, 2021, Hector Cuevas hung himself with a bedsheet in his cell. *Id.* **at 14, ¶ 85**. The following day, Jonathan Cisneros did the same. *Id.* **at 14, ¶ 86**. In each of these cases, it took correctional officers at least several minutes and in some cases several hours before a correctional officer responded to the scene. *Id.* **at 14, ¶ 87**.

## LAW REGARDING RULE 12(b)(6) MOTION TO DISMISS

"To survive a [12(b)(6)] motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This does not mean that the complaint needs detailed factual allegations; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, the Court must assume all the complaint's factual allegations are true, but it is not bound to accept as true legal conclusions, including any "legal conclusion couched as a factual allegation." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Thus, the Court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In deciding whether the plaintiff's stated claim for relief is adequate, the Court views "the totality of the circumstances as alleged in the complaint in the light most favorable to [the plaintiff]." *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005). The essential question is whether the plaintiff nudged his or her claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## LAW REGARDING QUALIFIED IMMUNITY

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "On a motion to dismiss, 'it is the defendant's conduct <u>as</u> <u>alleged</u> <u>in</u> <u>the</u> <u>complaint</u> that is scrutinized for [constitutionality].'" *Bledsoe v. Carreno*, 53 F.4th 589, 607 (10th Cir. 2022) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

"When a defendant asserts qualified immunity at the motion to dismiss phase, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the [1] defendant[ ] plausibly violated their constitutional rights, and that [2] those rights were clearly established at the time.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1265 (10th Cir. 2025) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)). "But if the plaintiff fails to satisfy either prong, a court must grant qualified immunity." *Id.* (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

## <u>DISCUSSION</u>

In their Motion to Dismiss, the NMCD Defendants ask the Court to dismiss all Plaintiff's claims against them. (**Doc. 12**). Specifically, they seek dismissal of the following:

- Count II against all NMCD Defendants for Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983

- Alternate Count II against all NMCD Defendants for Eighth Amendment violations pursuant to § 1983; and

- Count VI against NMCD and Warden Hatch for Fourth and Fourteenth Amendment violations pursuant to § 1983 based on false imprisonment.

In her Response, Plaintiff does not oppose dismissal of Count VI. (**Doc. 18**) **at 21**. Consistent with Plaintiff's non-opposition, the Court **DISMISSES** Count VI. As a result, the

Court need only determine whether dismissal of Count II and Alternate Count II as to the NMCD Defendants is proper.

Both Count II and Alternate Count II are § 1983 deliberate indifference claims against the NMCD Defendants. Count II, however, is brought under the Fourteenth Amendment, while Alternate Count II is brought under the Eighth Amendment. Claims based on conditions of confinement are governed by the Eighth Amendment for prisoners and by the Fourteenth Amendment for pretrial detainees. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). Although these claims are brought under different Amendments, the legal analysis is the same. *See Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994) ("[P]retrial detainees are entitled to the same degree of protection against denial of medical cares as that afforded to convicted inmates under the Eighth Amendment."); *George v. Beaver Cnty*, 32 F.4th 1246, 1256 (10th Cir. 2022) (explaining that same deliberate-indifference standard applies "no matter which amendment provides the constitutional basis for the claim"). Because the legal analysis is the same under both the Eighth and Fourteenth Amendments, if Plaintiff cannot state a plausible claim under Count II, then Alternate Count II would likewise fail.

To prevail on a deliberate indifference claim against prison officials, an inmate must satisfy "a two-pronged inquiry, comprised of an objective and subjective component.'" *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The objective component is satisfied "if the deprivation is 'sufficiently serious.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). An inmate's death, by suicide, is a harm sufficiently serious, to satisfy the objective component of a deliberate-indifference claim. *See Cox v. Glanz*, 800 F.3d 1231, 1240 n.3 (10th Cir. 2015) (accepting district court's conclusion that objective component was satisfied in inmate

suicide case); *Collins v. Seeman,* 462 F.3d 757, 760 (7th Cir. 2006) ("[I]t goes without saying that 'suicide is a serious harm.'").

The subjective component is satisfied if a defendant "knew [the detainee] faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it." *Estate of Burgaz v. Bd. of Cnty. Comm'rs*, 30 F.4th 1181, 1186 (10th Cir. 2022) (citation omitted). In the context of an inmate-suicide case, such as this one, this component is satisfied if the defendant or defendants knew of and disregarded a substantial risk that the inmate would imminently commit suicide. *Kincaid v. GEO Grp., Inc.*, 2024 WL 4241549, at *3 (D.N.M.).

I.    **Count II and Alternate Count II against the Individual NMCD Corrections Officers:**

In their Motion to Dismiss, the NMCD Defendants raise two arguments in support of dismissal of Plaintiff's § 1983 deliberate indifference claims against the individual corrections officers. *First*, they argue dismissal is warranted because Plaintiff relies on collective allegations against all the NMCD Defendants, failing to give each NMCD Defendant—including the individual corrections officers—fair notice of the unconstitutional acts attributed to them. (**Doc. 12**) **at 8–10**.

*Second*, the NMCD Defendants argue Plaintiff's allegations regarding the individual corrections officers' knowledge of Mr. Garcia's suicide risk are conclusory and lack any factual detail explaining how they became aware of that risk. *Id.* **at 11–13**.

In her Response, Plaintiff argues that each of the NMCD Defendants are on notice of the specific acts attributed to them. (**Doc. 18**) **at 10–11**. She asserts that the First Amended Complaint alleges that each NMCD Defendant failed to provide Mr. Garcia with medication, including morning and evening doses on July 27, failed to offer adequate counseling and care,

failed to properly evaluate Mr. Garcia's mental health, and failed to sufficiently and regularly monitor him. *Id.* **at 10.**

Plaintiff also disputes that the First Amended Complaint does not sufficiently plead the officers' subjective knowledge of Mr. Garcia's suicide risk. *Id.* **at 12–13**. She contends the First Amended Complaint alleges that "Mr. Garcia's diagnoses of anxiety and depression required treatment and appropriate monitoring, and the suffering he manifested on July 27 following the correctional officers' failure to provide him with medication was obvious evidence of his substantial risk of suicide." *Id.* **at 13**.

This Court disagrees with Plaintiff's contention that the First Amended Complaint's collective allegations are sufficient to put each NMCD Defendant on notice of what unconstitutional acts are attributable to them. *See Robbins v. Oklahoma,* 519 F.3d 1242, 1249–50 (10th Cir. 2008) (explaining that in § 1983 cases involving a government agency and a number of government actors sued in their individual capacities, the complaint must clearly specify who did what to whom, to ensure each defendant receives fair notice of the claims against them). However, even assuming Plaintiff's allegations provided fair notice of the unconstitutional acts attributable to each NMCD defendant, this Court would still dismiss Plaintiff's § 1983 deliberate indifference claims against the individual corrections officers because the First Amended Complaint does not plausibly allege that the officers actually knew Mr. Garcia faced a substantial and imminent risk of suicide.

The instant case is similar to *Burgaz v. Bd. of Cnty. Comm'rs*, where the Tenth Circuit addressed whether to grant qualified immunity to a deputy at the motion-to-dismiss stage in a § 1983 deliberate indifference case involving an inmate suicide. 30 F.4th 1181, 1187 (10th Cir. 2022). One issue on appeal was the subjective component of the deliberate indifference

9

analysis—specifically, whether the deputy had actual knowledge of Ms. Burgaz's suicide risk. *Id.*

The complaint alleged that the deputy knew the following facts prior to Ms. Burgaz's suicide: "Ms. Burgaz (1) had attempted suicide previously at the same facility, (2) had various mental illnesses, (3) had a drug addiction, (4) had recently suffered sexual violence, (5) was despondent after hearing she would not be released soon, and (6) was in the least secure room in the SHU."[2] *Id.* at 1188. Despite taking all these allegations as true, the Tenth Circuit held that such allegations "fail[ed] to demonstrate the immediate and serious risk of suicide was obvious." *Id.* The Tenth Circuit explained that, at most, the deputy knew "she was interacting with a distressed detainee with a history of mental illness and self-harm. But there were no obvious indicators of suicide present." *Id.* The Tenth Circuit also emphasized that the complaint did not allege Ms. Burgaz had expressed suicidality, intentions to harm herself, or that she had been placed on suicide watch. *Id.*

In this case, accepting all Plaintiff's allegations as true, including the collective allegations, the individual corrections officers are alleged to have known only that Mr. Garcia (1) suffered from depression and anxiety; (2) was prescribed medication for these conditions; (3) was experiencing mental distress and anguish; and (4) had requested his medication. Notably, the First Amended Complaint contains no allegations that Mr. Garcia, while at CNMCF expressed suicidal ideation or engaged in suicidal behavior, nor that he was on suicide watch prior to his death.

---

[2] The SHU was the Special Housing Unit, "an area of the jail where detainees with special medical needs [were] placed." *Id.* at 1184.

As in *Burgaz*, where the deputy was aware of a detainee's mental health issues but not of any immediate suicide risk, the most the Court can infer from the allegations in the First Amended Complaint is that the corrections officers knew Mr. Garcia suffered from mental illness, not that he was suicidal. Without more, the First Amended Complaint fails to support an inference that the individual corrections officers actually knew Mr. Garcia was at substantial risk of imminent suicide. As a result, Plaintiff cannot satisfy the subjective component of her deliberate indifference claims.

Finally, Plaintiff also contends that the individual corrections officers were deliberately indifferent to Mr. Garcia's depression, mental anguish, and distress. (**Doc. 18**) **at 8**. Assuming (1) these conditions were sufficiently serious to meet the objective component of a deliberate indifference claim, and (2) the officers were aware of them, the only alleged conduct relating to Mr. Garcia's depression, mental anguish, and anxiety is the failure of the individual corrections officers to provide Mr. Garcia his medication in the morning and afternoon of July 27, 2021. Plaintiff concedes that Mr. Garcia ultimately received his medication later that evening, and as discussed above, there is no evidence the officers knew he was suicidal. Under these circumstances, the temporary delay in providing medication and not providing him more mental health cares does not amount to deliberate indifference. *See Hicks v. City & Cnty. of Denver*, 2019 WL 4306196, at *6 (D. Colo.) (finding no plausible allegation of deliberate indifference to a serious medical need when plaintiff alleged that he was denied medications for one day); *Stockwell v. Kanan*, 442 F. App'x 911, 914 (5th Cir. 2011) (unpublished) ("[A] missed dose of medication does not, without more, constitute deliberate indifference.").

For all the reasons set forth above, Plaintiff cannot show that any of the individual corrections officers violated a constitutional right. Therefore, these corrections officers—

Rascon, Chavez, Richardson, Tena, Santiago, Madrid, and Velasco—are entitled to qualified immunity on both Count II and Alternate Count II.

## II.    <u>Count II and Alternate Count II Against Warden Hatch</u>

In their Motion to Dismiss, the NMCD Defendants argue that dismissal of Plaintiff's § 1983 deliberate indifference claims against Warden Hatch is warranted because "there are no facts alleged that would tie Warden Hatch's alleged general knowledge of prison suicides to a risk of harm to Garcia." (**Doc. 12**) **at 13–14**.

In her response, Plaintiff counters that "Defendant Warden Hatch is liable under the generalized risks theory , as the recent suicides at CNMCF, all hangings with bedsheets, and the causal connection between those suicides and Defendant Hatch's Failure to train his correctional officers and/or medical providers to correctly supervise and monitor the inmates place him on notice of the significant likelihood that further suicides would occur." (**Doc. 18**) **at 16**.

"§ 1983 jail-suicide supervisory liability claims require the supervisor to have known that the specific inmate at issue presented a substantial risk of suicide." *George v. Beaver Cnty.*, 32 F.4th 1246, 1257 (10th Cir. 2022) (citing *Cox v. Glanz*, 800 F.3d 1231, 1250 (10th Cir. 2015)). Thus, contrary to Plaintiff's belief, Warden Hatch cannot be liable under a generalized risks theory. Plaintiff's First Amended Complaint alleges only that Warden Hatch was aware of a generalized risk of suicide at CNMCF; it does not plausibly allege that he had actual knowledge of a substantial and imminent risk of suicide specific to Mr. Garcia. Without such a showing, Plaintiff did not plausibly allege a constitutional violation, and Warden Hatch is entitled to qualified immunity.

### III.    <u>Count II and Alternate Count II against NMCD</u>

NMCD is an agency of the State of New Mexico and claims against it are essentially claims against the state.  Because the State of New Mexico is not a "person" under § 1983, there is no remedy against it under § 1983. Thus, NMCD, as an arm of the state, also has no remedy against it under § 1983.  *See Blackburn v. Department of Corrections*, 172 F.3d 62, 63 (10th Cir. 1999) (unpublished) ("New Mexico Department of Corrections is not a 'person' subject to suit under § 1983."); *Buchanan v. Okla.*, 398 F. App'x 339, 342 (10th Cir. 2010) (unpublished) ("[S]tate-operated detention facilities do not have a separate legal identity from the state, and therefore are not 'persons' who have the capacity to be sued under § 1983").

### IV.    <u>Amendment:</u>

In her Response, Plaintiff requests leave to amend her First Amended Complaint if the Court finds any of her claims should be dismissed.  However, the NMCD Defendants previously filed a Motion to Dismiss (Doc. 3) on December 18, 2024, raising substantially the same arguments as those presented in the current Motion to Dismiss (Doc. 12).  In response, Plaintiff filed her First Amended Complaint (Doc. 11) to cure the deficiencies identified in the original Motion to Dismiss (Doc. 3).  Despite this opportunity to amend in response to the same arguments presented in the instant motion, Plaintiff's First Amended Complaint does not state a plausible § 1983 deliberate indifference claim against the NMCD Defendants.  Thus, allowing further amendment would be futile.

Additionally, Plaintiff did not file a proposed amended complaint or identify any new allegations she would include in her amended complaint.  Without such information, the Court cannot assess whether further amendment might cure the existing deficiencies.   Based on the foregoing the Court denies Plaintiff leave to amend. *See Hnath v. Hereford*, 2011 WL 1398823,

at *2 (N.D. Okla.) (denying plaintiff leave to amend because she "failed to plead with sufficient particularity the grounds for the proposed amendment of complaint"); *Maser v. Commonspirit Health*, 2024 WL 5484079, at *3 (D. Colo.) (same).

## CONCLUSION

In sum, the Court **GRANTS** the NMCD Defendants' Motion to Dismiss (**Doc. 12**). The Court **DISMISSES** Count II, Alternate Count II, and Count IV as to all the NMCD Defendants **with prejudice**.

**IT IS SO ORDERED.**

/s/ KENNETH J. GONZALES[3]
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.